25-661
*Cicchiello v. Warden*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of August, two thousand twenty-six.

PRESENT: STEVEN J. MENASHI,
SARAH A. L. MERRIAM,
*Circuit Judges*,
JOHN P. CRONAN,
*District Judge.*[*]

---

JOAN CICCHIELLO,

*Plaintiff-Appellant*,

v. No. 25-661

WARDEN, DANBURY, OFFICIAL CAPACITY, DANBURY FEDERAL INSTITUTE, AMUNDSON, DR., INDIVIDUAL AND OFFICIAL CAPACITY, S. MOORE, INDIVIDUAL AND OFFICIAL CAPACITY, FOISOY, LIEUTENANT, INDIVIDUAL AND OFFICIAL CAPACITY, MOSSIONIER, SUPERVISOR MAIL ROOM, INDIVIDUALLY AND OFFICIAL

---

[*] Judge John P. Cronan of the United States District Court for the Southern District of New York, sitting by designation.

CAPACITY, MAIL ROOM STAFF, INDIVIDUAL AND OFFICIAL CAPACITY, RAMOS, MR, INDIVIDUAL AND OFFICIAL CAPACITY, CLARK, MR., INDIVIDUAL AND OFFICIAL CAPACITY,

*Defendants-Appellees*.

---

*For Plaintiff-Appellant*: FARAH MAVRAKIS (Danielle Hamilton, Bryce Collings, Hongye Zhang, *on the brief*), Northwestern Pritzker School of Law, Federal Appellate Litigation Clinic.

*For Defendants-Appellees*: No appearance.

Appeal from a judgment of the United States District Court for the District of Connecticut (Bolden, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED IN PART**, **VACATED IN PART**, and **REMANDED**.

Plaintiff-Appellant Joan Cicchiello appeals from the judgment dismissing three claims for damages she brought against federal officials based on alleged violations of her constitutional rights while she was incarcerated at Danbury Federal Correctional Institution.[1] *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). Cicchiello argues that her claims were sufficiently similar to the Supreme Court's prior *Bivens* cases and, in the alternative, she argues that even if her claims presented a "new *Bivens* context," "special factors" did not counsel

[1] Cicchiello also brought claims seeking injunctive relief, but she does not address those claims on appeal and has therefore forfeited argument that those claims should not have been dismissed.

against extending *Bivens* to cover her claims. *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017)). We assume the parties' familiarity with the facts, the procedural history, and the issues on appeal.

**I**

"In *Bivens v. Six Unknown Fed. Narcotics Agents*, [the Supreme] Court authorized a damages action against federal officials for alleged violations of the Fourth Amendment." *Id.* at 486 (citation omitted). After *Bivens*, "the Court twice again fashioned new causes of action under the Constitution—first, for a former congressional staffer's Fifth Amendment sex-discrimination claim, and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment." *Id.* at 490-91 (citation omitted) (citing *Davis v. Passman*, 442 U.S. 228 (1979), and *Carlson v. Green*, 446 U.S. 14 (1980)).

Since the decisions in *Bivens*, *Davis*, and *Carlson*, the Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). The Supreme Court has "emphasized that recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'" *Egbert*, 596 U.S. at 491 (quoting *Ziglar*, 582 U.S. at 135). In other words, the Court has not overruled *Bivens*, *Davis*, or *Carlson*. Rather, it has established a two-step test to determine whether a plaintiff may sue a federal official in a damages action for a violation of the Constitution.

"First, we ask whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningfully' different from the three cases in which the Court has implied a damages action." *Id.* at 492 (alteration omitted) (quoting *Ziglar*, 582 U.S. at 139). "Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Ziglar*, 582 U.S. at 136). At this step, "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (quoting *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020)).

The Court has emphasized that these two "steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.*

## II

With that test in mind, we consider Cicchiello's first claim for damages. She "alleged that prison staff failed to remedy unlivable conditions of confinement. Ms. Cicchiello alleged that when she was seventy-three years old and had a known heart condition, she was routinely exposed to temperatures exceeding 100° Fahrenheit for prolonged periods of time." Appellant's Br. 20. In other words, she alleged a violation of the Eighth Amendment. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (noting that "the deliberate indifference standard applied to Eighth Amendment claims involving medical care" also applies "to claims about conditions of confinement"). The district court dismissed this conditions-of-confinement claim with prejudice, concluding that "Ms. Cicchiello's Eighth Amendment claims arising from … allegedly overly hot conditions of confinement and sexual harassment or failure to protect her from such harassment by BOP staff present new contexts for a *Bivens* remedy." App'x 12. And "the existing alternative remedies of the BOP Administrative Remedy Program for such claims precludes the Court from extending a *Bivens* remedy." *Id.*

On appeal, Cicchiello does not argue that her Eighth Amendment claim stems from "sexual harassment or failure to protect her from such harassment by BOP staff." *Id.* Therefore, we "deem[]" any argument relating to that conduct to be "abandoned." *Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, 79 F.4th 206, 232 n.25 (2d Cir. 2023). However, on appeal, she does insist "that prison staff failed to remedy unlivable conditions of confinement." Appellant's Br. 20. She emphasizes that "she [is] seventy-three years old and had a known heart condition, [but] was routinely exposed to temperatures exceeding 100° Fahrenheit for prolonged periods of time." *Id.*

We conclude that the district court prematurely dismissed this claim with prejudice. Cicchiello contends that, if given leave to amend, she "would … include her medical records to support her allegation that FCI Danbury was aware of her serious heart condition." *Id.* at 37. If she could make that factual showing, her Eighth Amendment claim would mirror the claim brought in *Carlson*—a case in which the Supreme Court *did* permit a *Bivens* action to proceed.

In *Carlson*, the staff at a federal corrections institution were "fully apprised" of the "inadequacy of medical facilities" at the institution and of "the seriousness of [the plaintiff's] chronic asthmatic condition," but they "nonetheless kept him in that facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital." 446 U.S. at 16 n.1. In that case, the Supreme Court permitted Carlson to "recover damages against the [prison] official[s] in federal court despite the absence of any statute conferring such a right." *Id.* at 18.

Accordingly, we vacate the judgment insofar as the district court dismissed Cicchiello's Eighth Amendment claim with prejudice. *See Collymore v. Krystal Myers, RN*, 74 F.4th 22, 27 (2d Cir. 2023) ("*Sua sponte* dismissal of *pro se* prisoner petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is disfavored by this Court.") (quoting *Moorish Sci. Temple of Am., Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982)). In this case, amendment may not be futile if Cicchiello can show that her case is similar enough to *Carlson*. If she can plausibly allege (1) that the corrections officials were aware of her medical condition and of the institutional conditions that exacerbated her condition and (2) that the officials nevertheless exposed her to conditions contrary to medical advice, then her claim would not represent a "new *Bivens* context." *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 139).

We recognize that the Supreme Court has suggested that if *Carlson* were argued today, the Court might not permit the plaintiff to seek damages in the absence of a statutory cause of action. *See Ziglar*, 582 U.S. at 134. "But 'we are bound to follow the existing precedent of the Supreme Court until that Court tells us otherwise.'" *Baroni v. Port Auth. of N.Y. & N.J.*, 161 F.4th 48, 57 (2d Cir. 2025) (alteration omitted) (quoting *McKinney v. City of Middletown*, 49 F.4th 730, 746 (2d Cir. 2022)). "[U]nless the Court overrules *Carlson*," Cicchiello may be "among that decision's beneficiaries." *Brooks v. Richardson*, 131 F.4th 613, 615 (7th Cir. 2025) (Easterbrook, J.).

We add an important qualification. Cicchiello sues several employees of FCI Danbury, some of whom appear to be supervisors who had no direct role in the treatment—or the lack of treatment—of Cicchiello. Others appear to have played no role at all in the alleged Eighth Amendment violation. We emphasize that "for *Bivens* suits against federal officials[,] … 'government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.'" *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (alteration omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)); *see also Brooks*, 131 F.4th at 616 ("[S]upervisors who did not treat Brooks … cannot be liable under the holdings of *Iqbal* … and similar decisions."). "Rather, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 616 (quoting *Iqbal*, 556 U.S. at 676). On remand, the district court must determine whether Cicchiello has plausibly alleged—or may plausibly allege with amendment—that each individual defendant "had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." *Id.*

## III

Cicchiello also seeks damages for a Fourth Amendment violation and a Fifth Amendment violation. We conclude that the district court properly dismissed

those claims. Each claim presents a "new *Bivens* context," and "special factors" counsel against extending *Bivens* to these sets of facts.

**A**

For the Fourth Amendment claim, Cicchiello contends that she was subjected to an unconstitutional strip search while incarcerated. On appeal, she argues that these "allegations … do not present a new *Bivens* context, as the facts surrounding [her] complaint are not meaningfully different to the facts in *Bivens* itself. This case and *Bivens* both concern allegations of a privacy interest being violated by federal officers." Appellant's Br. 15.

We disagree. It is true that *Bivens* involved an alleged violation of the Fourth Amendment. But the mere fact that a case involved the same constitutional amendment is not dispositive. In *Malesko*, the plaintiff alleged violations of the Eighth Amendment—just as the plaintiff had done in *Carlson*—but the Court did not extend *Bivens* to the facts of that case. *See* 534 U.S. at 73-74; *see also Ziglar*, 582 U.S. at 139 ("In both cases, the right at issue was the same: the Eighth Amendment right to be free from cruel and unusual punishment. And in both cases, the mechanism of injury was the same: failure to provide adequate medical treatment."). Likewise, *Egbert* involved a Fourth Amendment claim—just as in *Bivens*—but the Court did not allow the plaintiff to pursue a *Bivens* remedy. That was the case even though the plaintiff alleged excessive force by a law enforcement officer—the same type of conduct that occurred in *Bivens* itself. *See Egbert*, 596 U.S. at 494-95. The Court has told us that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 589 U.S. at 103.

It is also true that *Bivens* involved a "visual strip search." 403 U.S. at 389. But that is one discrete fact. Viewed holistically, *Bivens* and this case are very different. In *Bivens*, federal officers entered the plaintiff's home. "The agents manacled petitioner in front of his wife and children, and threatened to arrest the entire family. They searched the apartment from stem to stern. Thereafter, petitioner was

taken to the federal courthouse in Brooklyn, where he was interrogated, booked, and subjected to a visual strip search." *Id.* The plaintiff in *Bivens* was not a convicted prisoner when he was searched; the strip search was at a courthouse and performed during booking, when he was merely accused of an offense. And the other conduct did not occur in a government facility at all but in a private home.

The Supreme Court has emphasized that a court should "regard a context as 'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by this Court.'" *Hernandez*, 589 U.S. at 102 (quoting *Ziglar*, 582 U.S. at 139). The Court's "understanding of a 'new context' is broad." *Id.* Searches that occur in prison are subject to distinct constitutional standards. The Supreme Court "has confirmed the importance of deference to correctional officials and explained that a regulation impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'" *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 326 (2012) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Searches of convicted prisoners that occur in prison represent a new context, and there is reason to think that Congress would be better equipped than the courts to fashion a remedy in this context. *Cf. id.* at 328 (explaining that "determining whether a policy is reasonably related to legitimate security interests is 'peculiarly within the province and professional expertise of corrections officials'") (quoting *Bell v. Wolfish*, 441 U.S. 520, 548 (1979)).

The claims of excessive force in *Egbert* more closely resembled those in *Bivens* than the claims in this case. The Court noted that "*Bivens* and [*Egbert*] do involve similar allegations of excessive force and thus arguably present 'almost parallel circumstances' or a similar 'mechanism of injury,'" but the Court still emphasized that "these superficial similarities are not enough to support the judicial creation of a cause of action." *Egbert*, 596 U.S. at 495 (quoting *Ziglar*, 582 U.S. at 139). *Egbert* represented "a more 'conventional' excessive-force claim, as in *Bivens*," but that did "not bear on the relevant point." *Id.* The Court concluded that "the Judiciary is comparatively ill suited to decide whether a damages remedy against any Border Patrol agent is appropriate." *Id.*

We reach the same conclusion here. First, Cicchiello brings a Fourth Amendment claim against prison officials for conduct that occurred within a prison. Second, she does not allege excessive force. She alleges a Fourth Amendment violation based on the unreasonableness of the search. The difference in the type of constitutional violation suggests that this is a new context. *See Ziglar*, 582 U.S. at 140. Third, *Bivens* addressed a strip search of an arrestee at what appears to have been a courthouse jail. But a strip search of a convicted prisoner in a prison implicates different constitutional concerns. *See Florence*, 566 U.S. at 341-42 (Alito, J., concurring).

Given that this is a new context, we ask whether we should extend *Bivens*. "[A] *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 136). One key factor is whether there is "an alternative remedial structure present in a certain case." *Ziglar*, 582 U.S. at 137. "[T]hat alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.*

The district court in this case "determined that a special factor—the existence of the [Bureau of Prisons] Administrative Remedy Program—counseled hesitation to extend *Bivens* to Ms. Cicchiello's Fourth Amendment claim." App'x 10. Cicchiello argues that her "complaint … describe[s] her several failed attempts to utilize the administrative process, including requests for BOP Administrative Remedy forms that were not honored and internal complaints filed without receiving substantive responses." Appellant's Br. 28-29. "She alleges that FCI Danbury officials repeatedly refused to file her grievances. In one instance, an official kept Ms. Cicchiello's paperwork for thirty days." *Id.* at 22 (citation omitted).

The existence of the BOP Administrative Remedy Program counsels against extending *Bivens* to this new context. In *Hernandez*, the Supreme Court "declined to authorize a *Bivens* remedy, in part, because the Executive Branch already had

investigated alleged misconduct by the defendant Border Patrol agent." *Egbert*, 596 U.S. at 497. Likewise, "[i]n *Malesko*, [the Court] explained that *Bivens* relief was unavailable because federal prisoners could, among other options, file grievances through an 'Administrative Remedy Program.'" *Id.* (quoting *Malesko*, 534 U.S. at 74). And in *Egbert*, the only remedies available were administrative "grievance procedure[s]." *Id.* That, too, was enough to counsel against an extension of *Bivens*.

Anticipating that the availability of BOP remedies might foreclose an extension of *Bivens*, Cicchiello argues that, *in this instance*, those remedies were inadequate. But the Supreme Court has instructed that a "court should not inquire … whether *Bivens* relief is appropriate in light of the balance of circumstances in the 'particular case.'" *Egbert*, 596 U.S. at 496 (quoting *United States v. Stanley*, 483 U.S. 669, 683 (1987)). "[U]nder the proper approach, a court must ask 'more broadly' if there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate.'" *Id.* (alterations omitted) (quoting *Stanley*, 483 U.S. at 681). In other words, we ask "whether a court is competent to authorize a damages action not just against [the particular defendant] but against [the potential class of defendants] generally." *Id.* Cicchiello advocates the case-by-case analysis of available remedies that *Egbert* rejected. We affirm the judgment insofar as the district court dismissed the Fourth Amendment claim.

**B**

Cicchiello also alleges that prison officials interfered with her mail and her right of access to courts. The district court dismissed that claim, "holding [that] no *Bivens* claim existed under the First Amendment." App'x 12. The district court was correct that the Supreme Court has never applied *Bivens* to a First Amendment claim. *See Egbert*, 596 U.S. at 498. Cicchiello argues that the district court "should have considered the factual basis underlying Ms. Cicchiello's pro se complaint to determine if [those facts] stated a claim under *another amendment*. Had the district court done so, the district court would have recognized her claims alleged

violations under the Fifth Amendment." Appellant's Br. 30 (emphasis added). But even construing her complaint as alleging a Fifth Amendment violation, Cicchiello's claim fares no better. The district court correctly dismissed it.

Cicchiello claims that "FCI Danbury officials violated her right to due process when they interfered with her legal mail and deprived her of access to the courts." *Id.* at 30-31. We conclude that this allegation presents a "new *Bivens* context." *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 139). We recognize that the Supreme Court has allowed a *Bivens* claim to proceed in a case dealing with the Fifth Amendment. In *Davis*, the Court allowed an ex-employee of a congressman to sue him for sex discrimination. 442 U.S. at 245. But that claim and the claim brought here share no similarities aside from the heading of the Fifth Amendment.

*Davis* was a sex discrimination case. Such cases are typically litigated with reference to the Equal Protection Clause. But because the Equal Protection Clause does not apply to the federal government, the case proceeded under the equal-protection component of the Fifth Amendment Due Process Clause. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). So it is true that both *Davis* and this case concerned the same amendment, but this is still a "different type of claim." *Edwards v. Gizzi*, 107 F.4th 81, 85 (2d Cir. 2024) (Park, J., concurring in the judgment).

Allowing this claim to proceed would allow lawsuits against a "new category of defendants." *Malesko*, 534 U.S. at 68. And those lawsuits would arise from a wholly different environment—a prison as compared to Congress. *See Egbert*, 596 U.S. at 496. In other cases, the Supreme Court has expressly declined to extend *Bivens* to procedural due process claims. *See, e.g.*, *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988); *FDIC v. Meyer*, 510 U.S. 471, 473-74 (1994). We accordingly conclude that this is a "new *Bivens* context." *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 139). And the availability of BOP remedies discussed above counsels against extending *Bivens*. We affirm the judgment insofar as the district court dismissed the Fifth Amendment claim.

* * *

We have considered Cicchiello's remaining arguments, which we conclude are without merit. We affirm the judgment insofar as the district court dismissed Cicchiello's Fourth and Fifth Amendment claims. We vacate the judgment insofar as the district court dismissed Cicchiello's Eighth Amendment claim with prejudice. The case is remanded for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

